UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY EMERSON,<br><br>  Plaintiff,<br><br>  v.<br><br>IRON MOUNTAIN INFORMATION MANAGEMENT SERVICES, INC., et al.,<br><br>  Defendants. | Case No. 20-cv-08607-YGR (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 56, 57 |

This order resolves the pending disputes over Emerson's RFPs 1–7, 9–10, 12–13, 17–24, 26–27, 33–35, 37, 41–43, 46, and 48.

1. Iron Mountain's objections to the RFPs are largely boilerplate and unpersuasive. The RFPs are not irrelevant, vague or ambiguous, argumentative, harassing, or, with few exceptions, overbroad. Privacy interests will be safeguarded by the governing protective order. *See* Dkt. 22. And the burden of compliance doesn't clearly outweigh the benefit. (Iron Mountain hasn't put forward any evidence in an attempt to quantify that burden.) Subject to limited exceptions discussed below, *see infra* ¶¶ 6–9, the company's objections are overruled.

2. For many RFPs, Iron Mountain objected by stating that it already produced responsive documents as part of its initial disclosures under General Order 71. There isn't a complete overlap between what Emerson has asked for in her RFPs and what GO 71 requires defendants to disclose. This means that Iron Mountain may need to produce additional documents to comply with the RFPs. What Iron Mountain has done so far—telling Emerson that it produced responsive documents, per GO 71, but not clarifying whether *other* responsive documents have yet to be shared—isn't enough. An objection "must state whether any responsive materials are being withheld on the basis of that objection." FRCP 34(b)(2)(C). The company must amend its responses to conform with this rule.

3. Iron Mountain says that its initial disclosures included certain emails and other ESI. But the company has been reluctant to produce additional ESI in response to Emerson's RFPs. Before

doing so, the company insists that Emerson must first propose a list of custodians and search terms. In making this demand, Iron Mountain relies on the governing Guidelines for the Discovery of Electronically Stored Information,[1] which require litigants to meet and confer about ESI and to cooperate in formulating an ESI discovery plan.

Cooperation is expected, but the ESI Guidelines don't require parties who request ESI to first propose a list of custodians and search terms. There may be cases in which that step is sensible, but this case isn't clearly one of them. Iron Mountain is in a better position than Emerson to know which of its employees are likely to have responsive ESI and to determine how that ESI can best be located, reviewed, and produced. Iron Mountain, then, must take the initiative.

First, Iron Mountain must select the custodians it deems most likely to possess responsive ESI and search their electronic records. Iron Mountain may use targeted search terms, but it must test and modify them if necessary to locate responsive documents. Second, Iron Mountain must produce the ESI it finds and tell Emerson which custodians and search terms it used. Third, if warranted, Emerson may ask Iron Mountain to add additional custodians or search terms. Emerson must be specific and explain why the additional custodians or search terms will plausibly yield responsive ESI. If she satisfies that burden, Iron Mountain must conduct further searches. This protocol is based in part on the one set out in *In re EpiPen Marketing, Sales Practices & Antitrust Litigation*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018). It will govern moving forward.

4. For RFPs 17 and 18, Iron Mountain must amend its responses to clarify whether any responsive documents are in its possession, custody, or control. If they are, Iron Mountain must produce them. If they aren't, the company must say so.

5. Emerson has clarified that for RFP 24 she seeks only a sampling of responsive documents. *See* Dkt. 56 at 3. Per the RFP, these documents must "identify the positions held and/or the employer(s)" of the seven individuals who were participants in the alleged adverse actions taken against her. Dkt. 56-1 at 27. As narrowed, RFP 24 is not overbroad. Nor, as Iron Mountain argues,

---

[1] *See* https://cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf.

does RFP 24 seek information that can be obtained only by interrogatory. The company must produce the sampling of documents requested.[2]

6. For RFPs 10, 12, and 33, Iron Mountain need only produce responsive documents from October 2016 to present, not from 2015 to present as Emerson requested. Under GO 71, "the relevant time period begins three years before the date of the adverse action, unless otherwise specified." GO 71 governs initial disclosures, not RFPs, but the three-year period is reasonable and will be applied here as well. As alleged, Iron Mountain's first adverse action against Emerson took place in October 2019. *See* Compl. ¶ 10. Three years before then was October 2016.

7. RFP 6 seeks all documents that "identify, describe, or explain PLAINTIFF's job title(s) or position(s) at any time during her employment." Dkt. 56-1 at 9. This request is overbroad. It would cover all emails by Emerson that listed her job title in a signature block. Emails sent by other employees who had the same job title as Emerson and who similarly listed it in a signature block may also be responsive. Most (if not all) of Emerson's emails are likely discoverable, but the request as written is a roundabout way to seek them. And Emerson hasn't explained why the emails of other employees who had the same job title as her would be relevant. Emerson may try to reformulate her request, but Iron Mountain need not produce documents responsive to it as written.

8. RFP 27 seeks all "entries or notations in any calendar, journal, appointment book, diary, or similar DOCUMENT that refer to PLAINTIFF . . . from 2019 to [present]." The request goes on to explain that it "includes, but is not limited to, all such documents authored or maintained by Gia Allen, Michael Mahoney, Michelle Coffey, Sarah Rook, Rachel Lechinsky, Theresa Wall and/or George Rubi." Dkt. 57-1 at 3. The seven people listed are the current or former Iron Mountain employees who were allegedly involved in the adverse actions taken against Emerson.

As to the seven employees identified, RFP 27 seeks relevant information and isn't overbroad. But beyond them, the request stretches too far. Calendared lunches between Emerson and co-workers, and other similar documents that are irrelevant to Emerson's claims would be responsive. Iron Mountain must respond to RFP 27, but only in part. It need only produce responsive documents

---

[2] As Emerson explains, "[t]his would be only one to four selected documents for each person if they had one or two positions and were employed by one or two Iron Mountain entities." Dkt. 56 at 3.

1  that were authored or maintained by the seven employees identified.

2        9. RFP 41 seeks all documents "that constitute, identify, describe, relate or refer to any efforts made by DEFENDANT, or any actions taken by DEFENDANT, at any time during or after PLAINTIFF's employment, to prevent discrimination or retaliation from occurring." Dkt. 56-1 at 30. This request, too, is overbroad. Responsive documents would include those describing efforts taken by Iron Mountain to prevent discrimination in regions of the country far from where Emerson worked, in Livermore, CA. Emerson hasn't explained why such documents would be relevant. She may try to reformulate RFP 41, but Iron Mountain need not produce documents responsive to the request as written.

\* \* \*

Iron Mountain must comply with this order and produce all nonprivileged documents responsive to the RFPs at issue, unless otherwise noted, by September 24, 2021. To the extent the company believes certain responsive documents are privileged, it must identify those documents in a privilege log. *See* AGT Civil Standing Order § VII.D. Emerson's request for leave to move for attorneys' fees is denied. Each side will bear its own costs.

**IT IS SO ORDERED.**

Dated: September 2, 2021

ALEX G. TSE
United States Magistrate Judge