UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY EMERSON,<br><br>Plaintiff,<br><br>v.<br><br>IRON MOUNTAIN INFORMATION MANAGEMENT SERVICES, INC., et al.,<br><br>Defendants. | Case No. 20-cv-08607-YGR (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 58 |

Kimberly Emerson worked as a supervisor for Iron Mountain in Livermore, California. While on the tail end of an approved medical leave, she alleges that Iron Mountain removed her from her position. Once removed, she says that Iron Mountain didn't contact her to see if on-the-job accommodations or an extended leave of absence would have allowed her to return to work. Instead, the company fired her. She alleges that in taking these actions, Iron Mountain, among other things, discriminated and retaliated against her on the basis of her disabilities, race, and gender.

During discovery, Emerson served a variety of RFPs on Iron Mountain. Among them were four that requested documents related to other complaints made by employees against the company. Iron Mountain declined to produce the requested documents, leading Emerson to ask the Court for an order compelling Iron Mountain's production.

For ease of giving the parties' guidance, the Court has divided the requested documents into several categories and will evaluate those categories instead of the RFPs themselves. Some of these Court-delineated categories merge portions of two or more RFPs together. The categories are intended to cover all of the documents in question.

> <u>Category No. 1</u>: all documents that constitute, describe, identify or refer to any formal or informal complaints or allegations of disability- or race-related discrimination, retaliation, or harassment made against Gia Allen, Michael Mahoney, Michelle Coffey, Sarah Rook, Rachel Lechinsky, Theresa Wall, or George Rubi.

*See* Dkt. 58-1, RFPs 28–29, 31.

1	The seven listed persons are current or former Iron Mountain officials who allegedly played
2	a role in the adverse actions taken against Emerson. They include Emerson's former manager,
3	second-level manager, and one or more HR employees. *See* Dkt. 58 at 2–3. If other disability- or
4	race-related complaints or allegations have been lodged against these officials, that evidence may
5	be relevant to Emerson's claims. It could be used, for example, to establish the officials' motives
6	in terminating Emerson. *Cf. Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995) ("The sexual
7	harassment of others, if shown to have occurred, is relevant and probative of Caruso's general
8	attitude of disrespect toward his female employees . . . . That attitude is relevant to the question of
9	[his] motive for discharging [the plaintiff]."). "[C]ourts have routinely sanctioned use of this 'me
10	too' type of evidence." *Johnson v. United Cerebral Palsy/Spastic Children's Found. of L.A. &*
11	*Ventura Ctys.*, 173 Cal. App. 4th 740, 760 (2009). It won't always be admitted at trial: admission
12	"depends on many factors, including how closely related the evidence is to the plaintiff's
13	circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388
14	(2008). But at a minimum, because of its potential relevance, "me too" evidence of the kind
15	requested is discoverable. No case cited by Iron Mountain holds otherwise. Iron Mountain will
16	thus be required to produce all documents that come within the terms of Category No. 1.

> Category No. 2: all documents that don't fit within Category No. 1 but that constitute, describe, identify, or refer to any formal or informal complaints, allegations, or observations of inappropriate or unlawful conduct involving Gia Allen, Michael Mahoney, Michelle Coffey, Sarah Rook, Rachel Lechinsky, Theresa Wall, or George Rubi.

21	*See* Dkt. 58-1, RFP 31.
22	Like the first category, the second focuses on the seven terminating officials. But the second
23	category is broader. It extends to documents that constitute, describe, identify, or refer to
24	complaints, allegations, or "observations" of any "inappropriate or unlawful conduct" by these
25	officials, not just disability- or race-related discrimination, retaliation, or harassment. A wide
26	variety of documents could be responsive but irrelevant to Emerson's claims. As examples, if co-
27	workers exchanged emails in which they observed that one of the seven listed officials parked in the
28	wrong parking space or put food waste in the recycling bin, those emails could be responsive as

United States District Court
Northern District of California

documents that describe "observations" of "inappropriate" conduct. Yet those emails would have no bearing on Emerson's claims.

On the other hand, other documents in Category No. 2 could be relevant for impeachment purposes. For example, if one of the seven officials was censured for lying on a travel-reimbursement form, that fact would be probative of the official's character for untruthfulness, and documents describing the censure would come within the terms of Category No. 2. This category, then, does include potentially relevant documents, but it is overbroad. As a result, Iron Mountain will be required to produce only a subset of documents that fall within it. The company must produce all documents that constitute, describe, identify, or refer to any formal complaints, disciplinary action, or reprimands directed at any of the seven listed officials. The discovery of these documents, but not the others coming within Category No. 2, is "proportional to the needs of the case." FRCP 26(b)(1).

> Category No. 3: all documents that identify or refer to any formal or informal complaints or allegations of disability- or race-related discrimination, retaliation, or harassment made against any Iron Mountain employee by any person employed by the company in California, at any time from January 1, 2015, through the present.

*See* Dkt. 58-1, RFPs 28–29.

Category No. 3 builds upon Category No. 1. But while Category No. 1 focuses on complaints and allegations of disability- or race-related discrimination, retaliation, or harassment made against the seven terminating officials, Category No. 3 covers the same types of complaints and allegations, but made against *any* Iron Mountain employee by any person employed by the company in California during a seven-year period.

Emerson hasn't persuasively explained why this more expansive category of discovery is reasonably tailored to the facts of her case. If a complaint of disability-related discrimination was made against an Iron Mountain supervisor in San Diego, in 2017, documents referring to that complaint would come within Category No. 3. But if that San Diego-based supervisor played no role in the actions taken against Emerson, then documents referring to that complaint would have limited (if any) probative value in Emerson's case.

1  In a proposed amended complaint, Emerson does allege that Iron Mountain had "a pattern
2  and practice" of discriminating against disabled employees. Dkt. 36-2, Proposed FAC ¶ 25.[1] And
3  conceivably, the hypothetical San Diego-based complaint could be used to support this allegation.
4  To date, however, Emerson has identified only one example of this alleged pattern and practice; and
5  that example involves a former employee who, like Emerson, worked at Iron Mountain's Livermore
6  location. *See id.* ¶ 18. Given the lack of concrete allegations supporting a pattern and practice of
7  discrimination extending outside of Livermore and throughout California, the Court won't require
8  Iron Mountain to conduct state-wide "me too" discovery at this time. Emerson hasn't demonstrated
9  that this state-wide discovery is "proportional to the needs of the case." FRCP 26(b)(1); *see also*
10 *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the
11 use of discovery to engage in 'fishing expeditions.'") (simplified). Iron Mountain need not produce
12 documents falling within Category No. 3.

> Category No. 4: all documents constituting the face sheet of any
> complaint filed in any court in California on or after January 1, 2015,
> by any employee or former employee naming Iron Mountain.

15 *See* Dkt. 58-1, RFP 38.

16  The Court also won't compel Iron Mountain to produce documents within this final category.
17 Category No. 4 seeks state-wide "me too" discovery. Emerson, as noted above, hasn't shown that
18 state-wide discovery of this kind is appropriate. The complaint face sheets that Emerson seeks are
19 also part of the public record. Emerson, then, should be able to obtain what she's looking for even
20 without Iron Mountain's help. She hasn't established that the face sheets are less accessible to her
21 than to Iron Mountain. *See* FRCP 26(b)(1) (stating that courts should consider "the parties' relative
22 access to relevant information" in evaluating whether discovery is proportional to the needs of the
23 case).

24  * * *

25  Consistent with the above, Iron Mountain, by September 24, 2021, must produce:
26  • all documents in Category No. 1, as defined above; and

---

[1] A motion for leave to amend the complaint is pending before Judge Gonzalez Rogers. *See* Dkt. 36.

4

- all documents that constitute, describe, identify, or refer to any formal complaints, disciplinary action, or reprimands directed at Gia Allen, Michael Mahoney, Michelle Coffey, Sarah Rook, Rachel Lechinsky, Theresa Wall, or George Rubi (Category No. 2, in part).

Iron Mountain need not otherwise produce documents falling within Category Nos. 2–4.

**IT IS SO ORDERED.**

Dated: September 8, 2021

ALEX G. TSE
United States Magistrate Judge